UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| RUSSELL REYNOLDS ASSOCIATES, INC., <br><br> Plaintiff, <br><br> vs. <br><br> NADEZDA USINA, <br><br> Defendant. | Index No.: <br><br> **COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

Plaintiff Russell Reynolds Associates, Inc. ("Russell Reynolds" or "Company"), by and through its undersigned counsel, for its Complaint against Nadezda Usina ("Defendant" or "Usina"), hereby alleges as follows:

## NATURE OF THE CLAIMS

1. Plaintiff Russell Reynolds brings this emergent action for a temporary restraining order and preliminary injunction against its current employee and senior executive, Usina, to protect its confidential information, customer good will, and workforce, and to prevent the irreparable harm that will be caused by Usina's breach of her employee non solicitation and no hire, client non-solicitation, and confidentiality obligations to Russell Reynolds. Usina has advised the Company that she plans to resign from Russell Reynolds and found her own competing firm. Further, Usina has advised Russell Reynolds that three other current Russell Reynolds employees will be joining her at her new firm.

2. Russell Reynolds is a premier provider of senior level executive search and leadership advisory services, serving clients globally for 50 years. Usina is one of Russell Reynolds' highest ranking and highest compensated employees, earning over $9,000,000 in 2021

and $6,000,000 in 2022. Her corporate titles include Shareholder and Managing Director and operationally she holds the positions of Global Industry Leader for Russell Reynolds' Technology practice and Head of the Miami office. Previously, from 2018–2021, she sat on Russell Reynolds' nine person Executive Leadership Team that was responsible for, among other things, determining Russell Reynolds' strategy, management, investments and operations, reviewing and approving an annual budget, determining consultant and shareholder compensation (including bonuses and other incentive compensation), consultant promotions, and allocation of share offers to shareholders each year.

3.      In or about September 15, 2015, Usina was offered the opportunity to and agreed to acquire Russell Reynolds common stock and become a shareholder of the business pursuant to a Stock Agreement. In exchange, Usina agreed during her employment and for some time period thereafter not to solicit or hire employees (three years) or solicit clients with which she worked during the last two years of her employment (one year).

4.      On March 16, 2023, Usina informed Russell Reynolds' CEO, Constantine Alexandrakis, that she intended to terminate her employment with the Company to start her own new firm. Usina also told Mr. Alexandrakis that she would be taking three other current Russell Reynolds employees with her: Meredith Rosenberg, Mar Hernández and Libby Naumes. One of these individuals is also a Shareholder and Managing Director and subject to similar contractual obligations pursuant to the same Stock Agreement (Ms. Rosenberg), and the other two individuals are Usina's mentees for whom Usina serves as their formal Sponsor at the Company (Ms. Hernández and Ms. Naumes).

5.      On March 20, 2023, Russell Reynolds informed Usina that it had no objection to her starting her own firm because she has no post-employment non-competition obligations.

2

However, the Company advised Usina that it would protect its legitimate business interests (including preserving its confidential information and client relationships and customer good will), and thus, it could not permit her to solicit and hire away from the Company Ms. Rosenberg, Ms. Hernández or Ms. Naumes.

6.     Russell Reynolds also recently learned of at least two more instances of troubling behavior by Usina vis-à vis her employee and client non solicitation: (i) Usina solicited at least one other current Company employee (making this the fourth employee to date) who previously worked on Usina's team and now works for another Russell Reynolds team, by informing this individual "not to get too comfortable" with her new team as Usina has "something brewing"; and (ii) Usina appears to be usurping at least one Company opportunity by appearing to "park" a client engagement that initially came through to Russell Reynolds so that she can take that opportunity for her own personal benefit and the benefit of her new company.

7.     Russell Reynolds seeks a temporary restraining order, expedited discovery, and a preliminary injunction to protect its legitimate business interests and maintain the status quo while Russell Reynolds determines how to best prevent such irreparable harm.  Unless Usina is immediately enjoined, Russell Reynolds will likely experience (i) loss of employees, particularly three employees who hold significant roles within their respective teams at Russell Reynolds, (ii) loss of its client base and customer goodwill, and (iii) disclosure and improper use of its confidential information.

## THE PARTIES

8.     Plaintiff Russell Reynolds Associates, Inc. is a New York corporation with its principal place of business in New York.

9. Upon information and belief, Defendant Nadezda Usina is, and at all relevant times was, a citizen and resident of Florida.

## JURISDICTION AND VENUE

10. This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because this is an action between citizens of different states, and the amount in controversy exceeds $75,000 exclusive of interests and costs.

11. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(3) because Defendant is subject to personal jurisdiction in this forum pursuant to a forum selection clause contained in the Stock Agreement giving rise to this action, which specifies that the party who first initiates an action arising out of or in connection with the Stock Agreement may determine whether to bring the action in either the state of New York or London, United Kingdom.

## FACTUAL ALLEGATIONS

### A.    The Nature of Russell Reynolds's Business

17. Russell Reynolds is a premier provider of senior-level executive search and leadership advisory services, serving clients globally for 50 years. Over the years, Russell Reynolds, through its current 246 Managing Directors/Partners has developed strong client relationships at the highest levels with leading global, multi-national corporations, fast-growing mid-cap multi-national corporations and private enterprises.

18. The Company currently has approximately 2,260 active employees cross 48 locations globally. Russell Reynolds highly leverages its Partners' and Consultants' collective

4

expertise and relationships to identify, assess and develop leaders who can support the growth and success of clients.

**B.      Usina's Employment and Leadership Roles with Russell Reynolds**

18.      Usina joined Russell Reynolds in December 2009 as an Executive Director.  In 2012, she was promoted to Managing Director.  Usina has held positions on the Company's leadership teams and oversaw some of its most important and profitable industry sectors.  In connection with her senior positions of trust and confidence, Usina's total compensation, including base salary and bonus incentive compensation, in the two most recent full compensation years of 2022 and 2021 totaled over $15 million, with $9 million in 2021 and $6 million in 2022.

19.      Usina has held, and continues to hold, a variety of key leadership roles at the Company.  The Company is run by a nine person Executive Committee, which is chaired by the Company's Chief Executive Officer who is not a member of the Committee.  Usina served on the Company's Executive Committee from April 2018 through March 2021.  In that capacity, Usina played a role in, among other things, determining the Company's strategy, management, investments and operations, reviewing and approving an annual budget, determining consultant and Shareholder compensation (including bonuses and other incentive compensation), consultant promotions, and allocation of share offers to Shareholders each year.  In her role on the Executive Committee, Usina also had unique and privileged access to all the Company's most confidential and proprietary information, including pertaining to leadership and senior executive succession planning, allocation of compensation including bonus pool to the entire Company, Company business strategy, Company financial and pricing information, and go to market strategies for clients.

20. In her Russell Reynolds biography, Usina describes herself as the current leader of the Technology sector globally, which includes software, hardware, digital, telco, business & professional services companies, as well as all technical officer functions across sectors. She has had leadership of the Technology sector globally since 2018, regional oversight over the largest region of the Technology sector since 2014, and sole leadership of the Technology sector globally since 2022 as Global Industry Leader for Technology. In these roles, including as Global Industry Leader for Technology, Usina is and has been responsible for setting the overall strategy for the Company's growth of business in the Technology sector worldwide, including the identification and management of key client accounts. She is also responsible for guiding and advising other Technology focused consultants in their respective business development strategies and working with technology focused clients and accounts.

21. Across the Company, currently 122 employees have a major focus primarily on Technology, including Ms. Naumes, and another 134 consultants have declared Technology as a minor focus area, including Ms. Rosenberg and Ms. Hernandez.

22. Since September 2016, Usina has also been the Hub Leader (previously titled Area Manager) of the Miami Office. Usina had developed the analysis in support of the business case to open this office, raised her hand to run the office, and ultimately, the Company agreed to name her the Hub Leader. As Hub Leader, Usina is primarily responsible for the people and employee related functions of every employee of the Miami Office, including but not limited to hiring, development, promotion, compensation, as well as building the morale and culture of the office and leading and promotion various Company initiatives at the location. As Hub Leader, Usina is also the steward of and responsible for driving local market and brand strategy, building

up business, community and client relationships, and positioning and defining the Russell Reynolds' brand within the business community.

23.     The Miami Office currently consists of 14 employees, including Usina herself (9 Consultants, four Project Coordinators, and one Researcher), eight of whom report directly to Usina.

24.     Usina has been a leading player within the Company's Digital Media & Entertainment Practice, and the Company has made significant investments in her to build its Sports Practice.

25.     Over the past three years, Usina has worked on and/or sold approximately 460 client engagements to approximately 213 clients, making her a top five ranked biller for the Company over the past three fiscal years.

26.     She is also a member of the Board & CEO Advisory Partners practice, which is a dedicated expertise-based consulting team that works with CEOs and boards to provide advice and counsel on board and executive leadership, Board and CEO succession planning, corporate governance and Board performance and cultural maters. This practice is considered one of the more elite and high profile, prestigious areas of client work, granting Usina access to the highest level of confidential information of clients in this practice area.

27.     Over Usina's over 13 years of service with the Company, Russell Reynolds has invested significant resources in the support of her business development efforts and her personal development. Since the start of 2020 alone, the Company has spent approximately $405,000 in support of her business development efforts. This includes client entertainment costs of approximately $200,000 for the Masters Tournament and over $100,000 in Miami's Grand Prix Formula 1 race. It also includes almost $40,000 in support for her Florida State University

booster expenses and over $65,000 in other development expenses supporting other clients/targets. In addition, she has received external personal coaching assistance of almost $25,000 for her development and enrichment.

28.    In Usina's various leadership roles, Usina has had and continues to have vast access to Russell Reynolds' highly confidential information, including concerning employees and clients. More specifically, in connection with Usina's approximately 460 client engagements on behalf of approximately 213 clients in just the last 3 years, Usina had access to and continues to have access to confidential information regarding highly valuable client contact details, proprietary intelligence related to client organizations (e.g., organizational structure, strategy details, role descriptions), sensitive information on role compensation, information related to prospects and candidates for the role (e.g., compensation, career history, competencies, market intelligence), insight into leadership roles at clients, how clients run their businesses and how Russell Reynolds strategizes and prices its services to meet client needs  with expertise and access to this information within the Technology practice that she leads.

29.    Usina is also currently a formally assigned Sponsor to eight other Russell Reynolds consultants, including but not limited to Ms. Hernandez and Ms. Naumes, two of the employees Usina indicated she intends to hire away from the Company and engage with to join her new firm. The other six consultants formally assigned under Usina include two other Managing Directors and four other Executive Directors across the U.S., Brazil, and in Singapore  thus, Usina is a leader with sponsorship that spans the globe. Sponsorship is a form of apprenticeship to colleagues within the Company and is intended to serve as formalized career development resource and support. As Sponsor to Ms. Hernandez and Ms. Naumes, Usina was

formally assigned to oversee their career development in an effort to, among other things, provide training on work and guidance on how to successfully navigate the Company.

**C.    Usina's Continuing Contractual and Fiduciary Obligations to Russell Reynolds**

30.    In September 2015, Usina was given the opportunity and agreed to acquire Russell Reynolds common stock and become a Shareholder of the business pursuant to a Stock Agreement, which Usina signed on December 25, 2015.

31.    In exchange for that opportunity and substantial consideration received, and pursuant to the Stock Agreement, Usina agreed to certain post employment restrictive covenants, including but not limited to an agreement that during employment and for three years thereafter, she would not solicit, entice, persuade, encourage or otherwise induce or cause any employee of the Company to terminate their employment or to become employed by any person or entity other that the Company, and that she would not hire or otherwise engage any shareholder, officer or employee of the Company.

32.    The Stock Agreement also restricts Usina for one year post-employment from soliciting, contacting or communicating with certain clients for the purpose of engaging in business that is the same or similar to the Company's business of recruitment and assessment of executives and board directors, and the provision of leadership, succession and other consulting services. The Stock Agreement also includes a confidentiality and non-disclosure obligation on Usina during and post employment.

33.    The Stock Agreement does not include a post employment non compete obligation.

34.    Pursuant to this Stock Agreement, Usina currently holds approximately 10,500 shares of common stock of the Company, which shares are worth a very substantial amount of money.

35.    Pursuant to the Company's Code of Business Conduct & Ethics, Usina is also bound by confidentiality obligations as well as a duty not to engage in any activity that is not in the best interests of Russell Reynolds, and a prohibition on using Russell Reynolds property or services for personal benefit.  More specifically, pursuant to the Code's Confidentiality provisions, Usina is obligated to hold any information obtained from any client or candidate in the strictest confidence and may not use it for any personal benefit or gain, or the benefit or gain of persons or entities outside of the Company, and may not disclose any such information outside of the Company.  Usina is also obligated to take all reasonable steps to maintain the confidentiality of any information relating to the Company's current and former employees and is expressly not permitted to use any such information *other than for the purpose for which it was originally provided*.  Pursuant to the Codes' Conflict of Interest provision, Usina is also prohibited from engaging in activity that interferes with or has the appearance of interfering with her obligation to act in the best interest of Russell Reynolds, and may not use Company property or services for her personal benefit without proper authorization.

36.    As a Shareholder and owner of the business, Usina also owes the Company fiduciary duties not to engage in conduct that is detrimental or otherwise not in the best interests of Russell Reynolds, and a duty to inform the other owners of the business of any activity contrary to these duties.

**C.    Russell Reynolds' Investment in Ms. Rosenberg, Ms. Hernandez and Ms. Naumes, including Their Access to Confidential and Proprietary Information, Unique Client Relationships and Good Will**

37.    Ms. Rosenberg, Ms. Hernandez and Ms. Naumes are the three current Russell Reynolds employees whom Usina has solicited and continues to improperly solicit, and whom she intends to hire at her new firm in violation of her contractual and fiduciary obligations.

38.     Each of these three employees holds significant roles within their respective teams within the Company, has access to highly confidential and proprietary information of the Company, maintains significant and unique client relationships for the Company, and has developed substantial good will on behalf of the Company that are critical to Russell Reynolds' business.

39.     Moreover, each of these three individuals has been either formally mentored by Usina, or Usina has otherwise supported them in connection with their promotions and advancement within the Company, including in connection with one individuals' pending promotion to Managing Director.

**Ms. Rosenberg:**

40.     Ms. Rosenberg joined the Company in August 2013 as an Executive Director, and was promoted to Managing Director and Shareholder in July 2020 with Usina's support.

41.     In connection with Ms. Rosenberg's promotion to Managing Director, she was given the opportunity and agreed to acquire Russell Reynolds common stock and become a Shareholder of the business pursuant to a Stock Agreement, which Ms. Rosenberg signed on September 29, 2020.

42.     Pursuant to the Stock Agreement, Ms. Rosenberg, like Usina, is subject to certain covenants, including those related to employee and customer non-solicitation.

43.     Ms. Rosenberg's total compensation, including base salary and bonus incentive compensation, in the two most recent full compensation years of 2022 and 2021 was over $3,000,000, with $1,600,000 in 2022 and $1,450,000 in 2021.

44.     According to her Russell Reynolds biography, Ms. Rosenberg advises global organizations across the education and technology sectors on innovation, talent and transformational leadership issues. She partners with larger public and smaller venture capital

11

and private equity portfolio companies; content, software and technology providers; continuous learning and upskilling providers; for profit and Social Impact K-12 schools and higher education institutions. Ms. Rosenberg also is a key member of the Company's Diversity, Equity and Inclusion advisory practice.

45.   Ms. Rosenberg formally supervises the work of one other employee. In this role, Ms. Rosenberg has oversight with respect to this individual's performance review and potentially weighs in on compensation determinations. She is also formally assigned as the Sponsor for one other consultant at the Company in New York. Ms. Rosenberg is also viewed as a role model within the Company as exemplifying Company standards and culture, and mentors other colleagues in her assigned office and within her sector/practice areas. Ms. Rosenberg also has full access to confidential information regarding the Company's clients and client engagements, including with respect to budget and financials, pricing and billing strategy, overall business strategy to execute on the engagement and develop the client relationship.

46.   Over the past three years, Ms. Rosenberg has worked on and/or sold approximately 173 client engagements to approximately 84 clients.

47.   In 2020, Usina served as one of Ms. Rosenberg's 12 references in connection with Ms. Rosenberg's nomination for promotion to Managing Director. Usina and Ms. Rosenberg worked together   and continue to do so   in the Technology space and in the 18 months leading up to this promotion, the two engaged in weekly calls to discuss client related activities. In describing Ms. Rosenberg's impact on and role in the Company, references described her as a "true market maker with 'net new clients'," as someone who "[h]as built up the EdTech business" and is "[v]ery well networked, recognized externally in the market as the expert and go to person." Ms. Rosenberg was also described as "dominant in the EdTech space," as being

"known to everyone in the industry" and as someone who could be imagined to be "up to USD 5-7 million in delivery," which she has realized and surpassed.

48.     The Company has invested significant resources to support Ms. Rosenberg's business and personal development efforts.  From 2020 through 2022, Russell Reynolds expended over $180,000 on her alone in connection with executive leadership institutes and summits, including with respect to the significant GSV Summit event over several years.  And since the start of 2020 alone, Russell Reynolds has spent approximately $22,800 in support of Ms. Rosenberg's business development efforts.

**Ms. Hernandez:**

49.     Ms. Hernandez joined the Company in September 2016 as an Executive Director and reports directly to Usina.  Usina is thus directly responsible for Ms. Hernandez's performance reviews, compensation decisions and promotion recommendations.  Ms. Hernandez was also the first new hire to the Miami office when it opened and in Usina's own words, Ms. Hernandez has been an energetic contributor to building the team and bringing connectivity to the local market.

50.     Ms. Hernandez's total compensation, including base salary and bonus incentive compensation, in the two most recent full compensation years of 2022 and 2021 was over $2,700,000, with $1,250,000 in 2022 and $1,500,000 in 2021.

51.     According to her Russell Reynolds biography, Ms. Hernandez executes top human resources and financial officers searches and assessments across the C-suites for companies in the financial services, fintech, consumer and technology sectors.

52.     She is currently Co-Lead of the Hispanic Director's conference, and responsible for business strategy of the Company pertaining to the Hispanic business community, and leads

the Company's work with Hispanic directors. Ms. Hernandez is also Co-Lead of the Company's Hispanic Inclusion Network, and is viewed as a role model within the Company as exemplifying Company standards and culture, and mentors other colleagues. She also formally supervises the work of one other employee, and in this role, Ms. Hernandez has oversight with respect to this individual's performance review and potentially weighs in on compensation determinations. Ms. Hernandez also has full access to confidential information regarding the Company's clients and client engagements, including with respect to budget and financials, pricing and billing strategy, overall business strategy to execute on the engagement and develop the client relationship.

53.    Over the past three years, Ms. Hernandez has worked on and/or sold approximately 196 client engagements to approximately 101 clients.

54.    Earlier this year, Usina submitted Ms. Hernandez as a candidate for consideration to the Leadership and Promotions Board for promotion to Managing Director. And in this recommendation form, Usina specifically described Ms. Hernandez as "an execution machine who wins clients through her good work and hustle" whose "#s speak for themselves" and whose "contributions in informally and formally mentoring new members of the HR practice and researchers is real." According to Usina, Ms. Hernandez "operates like a partner" already.

55.    Since the start of 2020, Russell Reynolds has invested significant resources, totaling almost $50,000, to support Ms. Hernandez's business development efforts, with Usina having full visibility into and control and approval over these expenditures on Ms. Hernandez.

**Ms. Naumes:**

14

56.     Ms. Naumes joined the Company in August 2012 as a Research Associate, was promoted to Research Consultant in July 2013, to Associate in July 2015, and then Executive Director in July 2018.

57.     Ms. Naumes' total compensation, including base salary and bonus incentive compensation, in the two most recent full compensation years of 2022 and 2021 was over $1,300,000, with $735,000 in 2022 and $570,000 in 2021.

58.     According to her Russell Reynolds biography, Ms. Naumes specializes in recruiting leaders for go-to-market leadership roles at the intersection of sports, media, entertainment, hospitality, and technology. She has recently led several high-profile search and advisory projects for a variety of Fortune 500, private equity, and founder-led companies.  Ms. Naumes formally supervises the work of one other employee.  In this role, Ms. Naumes has oversight with respect to this individual's performance review and potentially weighs in on compensation determinations.  Ms. Naumes is also viewed as a role model within the Company as exemplifying Company standards and culture, and mentors other colleagues, particularly those who are former Researchers such as herself.  Ms. Naumes also has full access to confidential information regarding the Company's clients and client engagements, including with respect to budget and financials, pricing and billing strategy, overall business strategy to execute on the engagement and develop the client relationship.

59.     Usina served as a reference for Ms. Naumes' promotion in 2015 to Associate and again in 2018 to Executive Director.  Throughout Ms. Naumes' career at the Company, she has supported Usina.  According to Usina in connect with Ms. Naumes' 2015 promotion to Associate, Usina recruited Ms. Naumes and probably "spend[s] more time with her than anyone else."  They "finish each other['s] sentences."  In connection with her 2018 promotion to

Executive Director, Usina also specifically described Ms. Naumes as someone who "makes our firm credible in Digital . . . . 50% of the business comes from her."

60.    Since the start of 2020, Russell Reynolds has invested over $10,000, to support Ms. Naumes' business development efforts.

**C.    Usina's Stated Intent to Terminate Her Employment and Open Her Own Firm, and Her Troubling Conduct vis-à-vis Russell Reynolds Current Employees and Clients Access to Confidential Information**

61.    On March 16, 2023, Usina informed the Company's CEO, Constantine Alexandrakis that she has decided to leave the Company and start her own firm, along with Ms. Rosenberg, Ms. Hernandez and Ms. Naumes.  The next day, March 17, 2023, the Company's Chief People Officer, Renee Bell, spoke with Ms. Rosenberg, Ms. Hernandez and Ms. Naumes regarding the news that Usina had shared, and asked each of them if there was anything Russell Reynolds could do to change their minds about joining Usina.

62.    Given Usina's stated intent to open her own firm and hire or otherwise engage with three other current Russell Reynolds employees, on March 20, 2023, Russell Reynolds sent a letter to Usina outlining the Company's concerns with respect to her actions.  In that letter, the Company informed Usina that the Company would not be waiving her employee non solicitation and no hire obligations in the Stock Agreement and asked her to certify that she would comply fully with her restrictive covenant obligations contained therein, and cease and desist from any conduct in violation of those obligations.

63.    Following Usina's receipt of the Company's letter, she subsequently informed the Company's CEO that she still intends to terminate her employment and commence her own company and hire or otherwise engage in this new company with the other three Russell Reynolds employees, Ms. Hernandez, Ms. Rosenberg and Ms. Naumes.

64.    In addition to the three aforementioned employees whom Usina has solicited and intends to hire, Usina has also reached out to at least one other current Russell Reynolds employee, Laura Biafore, a Project Coordinator (making this the fourth employee solicited overall) to whom Usina previously had significant exposure through managing client work together and working with other consultants together.

65.    More specifically, Usina reached out to this individual by phone call and told her that she always enjoyed working with her, and to "not get too comfortable working" with her new team at Russell Reynolds because Usina "has something brewing."

66.    Furthermore, Usina appears be in the process of usurping at least one corporate opportunity of Russell Reynolds for her own personal benefit.  More specifically, it appears that a client contact reached out to Usina on her Russell Reynolds e mail account on or about March 10, 2023 regarding a new search opportunity to discuss with her.  Usina and this client contact exchanged further e-mails over the next several days, including pertaining to pricing and retainer information, as well compensation range information for the role at issue, but then the correspondence on Usina's Russell Reynolds e mail account stopped.

67.    Usina to date   about 10 days later   has not opened a potential new business entry for this opportunity, which is unusual and not in line with ordinary course business practice within the Company.  It has now come to Russell Reynolds' attention that Usina appears to have resumed those discussions with the same contact via her personal Yahoo e mail account, and to benefit herself personally and her new firm.

68.    Usina has shown that she has no regard for her continuing contractual obligations to Russell Reynolds particularly vis à vis her post-employment employee and client non-solicitation and no hire obligations.

## COUNT I

### (Breach of Contract)

12.    Russell Reynolds re-alleges and incorporates by reference herein the allegations set forth in the preceding paragraphs.

13.    Russell Reynolds and Usina are parties to the Stock Agreement, a valid and enforceable contract.

14.    Russell Reynolds has performed all of its duties under the Stock Agreement.

15.    Usina's Stock Agreement prohibits her from soliciting, hiring or otherwise engaging with certain Russell Reynolds employees and former employees as well as certain Russell Reynolds clients and prospects.

16.    Usina breached the Stock Agreement by soliciting at least three other Russell Reynolds employees for employment or engagement at a new firm she is founding. Further, Russell Reynolds has reason to suspect that Usina is in the process of improperly soliciting additional Russell Reynolds employees for employment or engagement at a new firm she is founding.

17.    On information and belief, Usina breached the Stock Agreement by diverting business away from Russell Reynolds, specifically by inducing a Russell Reynolds client to engage Usina's services personally rather than through the Company.

18.    Russell Reynolds has been injured and will continue to be injured by Usina's breach of the Stock Agreement in an amount that cannot readily be ascertained or compensated by money damages.

19.    As a direct and proximate result of Usina's breach of the terms of the Stock Agreement, Russell Reynolds has and will continue to sustain irreparable injury, the damages from

18

which cannot now be calculated. Accordingly, Russell Reynolds is entitled to a temporary restraining order and a preliminary injunction.

## COUNT II

### (Breach of Fiduciary Duty)

20.    Russell Reynolds re alleges and incorporates by reference herein the allegations set forth in the preceding paragraphs.

21.    By virtue of her position and employment with Russell Reynolds, her exposure to other Company employees provided to her by Russell Reynolds, her access to customers and prospective customers provided to her by Russell Reynolds, and her unique access to confidential information provided to her by Russell Reynolds, Usina was obligated to act solely in Russell Reynolds's interests.

22.    Usina, as a fiduciary of Russell Reynolds, was required to exercise the utmost faith and loyalty in the performance of his duties to Russell Reynolds, and had common law duties prohibiting her from improperly soliciting Russell Reynolds employees and subverting Russell Reynolds's business prior to her departure. Usina was also obligated not to misappropriate Russell Reynolds's confidential information or business opportunities.

23.    Further, Usina's fiduciary duties included a duty not to use confidential information to solicit, directly or indirectly, certain of Plaintiffs' employees and former employees and certain of Russell Reynolds' clients and prospective clients.

24.    Usina breached her fiduciary duties by, among other things, soliciting three of Russell Reynold's employees and upon information and belief, diverting at least one client opportunity away from Russell Reynolds' clients.

25.    Usina committed her actions knowingly, willfully, and in conscious disregard of Russell Reynolds's rights.

19

26. As a direct and proximate result of Usina's breach of her fiduciary duties, Russell Reynolds already has suffered and will continue to suffer extensive injury, including the loss of employees, clients, profits, business value, and good will, as well as additional damages, which continue to accrue in the form of attorneys' fees and costs related to this litigation.

### **PRAYER FOR RELIEF**

WHEREFORE, Russell Reynolds seeks judgement in its favor and an Order against Usina that grants the following relief:

1. A temporary restraining order and expedited discovery, and following a hearing;

2. A preliminary injunction order that, in accordance with the Stock Agreement, enjoins Usina, from the following activities:

    a. For a period of three years from her termination of employment from Russell Reynolds:

        i. directly or indirectly, whether alone or jointly with or on behalf of any person, firm, company or entity, hiring or otherwise engaging, or in any way participating or assisting any Future Associate in the hiring or engaging in services with (a) any shareholder, officer or employee of the Plaintiff or any of its subsidiaries or affiliates, or (b) any former shareholder, officer or employee who was employed by the Plaintiff or any of its subsidiaries or affiliates during the six months prior to such hiring or engagement (as the terms are defined in Defendant's September 2015 Stock Agreement); and

        ii. directly or indirectly, whether alone or jointly with or on behalf of any person, firm, company or entity, soliciting, enticing, persuading, encouraging or otherwise inducing or causing any employee of the

Plaintiff or any individual who was an employee of Plaintiff within the six month period preceding Defendant's termination of employment (including any of its subsidiaries or affiliates) to terminate such employment or to become employed by or with any person or entity other than the Plaintiff (including any of its subsidiaries or affiliates), or in any way assist any Future Associate in the pursuit of the foregoing (as the terms are defined in Defendant's September 2015 Stock Agreement).

    b. For a period of twelve (12) months following Usina's termination of employment from Russell Reynolds:

        i. directly or indirectly, whether individually or by assisting any other person, firm, company or entity, soliciting, contact, or communicating with any person or company for the purpose of engaging in business that is the same or similar to the Plaintiff's Business who was a client of the Plaintiff (including any of its subsidiaries or affiliates) for whom Plaintiff provided services in the twenty-four (24) months prior to Plaintiff's termination of employment, or in any way assist a Future Associate in the pursuit of the foregoing (as the terms are defined in Defendant's September 2015 Stock Agreement).

3. A preliminary injunction order that, enjoins Usina, using, disclosing, furnishing or making accessible, directly or indirectly, any trade secrets, confidential or proprietary information owned, developed or possessed by the Plaintiff, in whatever form, pertaining to the business of the

21

Plaintiff, including the identities of and information concerning clients, prospective clients, and individual contacts at business entities which are clients or prospective clients, and business relationships (as the terms are defined in Usina's September 2015 Stock Agreement).

4.    Awarding Russell Reynolds such further relief as the Court deems necessary and just.

5.    Plaintiff demands trial by jury on all issues properly so tried.

Dated: March 21, 2023

John P. Barry
john.barry@weil.com
Celine J. Chan
celine.chan@weil.com
**WEIL, GOTSHAL & MANGES LLP**
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000

**COUNSEL TO PLAINTIFF RUSSELL REYNOLDS ASSOCIATES, INC.**

22