

May 14, 2023

**BY ECF**
Hon. Jennifer H. Rearden
United States District Court
Southern District of New York
500 Pearl Street, Room 1010
New York, New York 10007

**Re:  Russell Reynolds Associates, Inc. v. Nadezda Usina, No. 23-CV-2369**

Dear Judge Rearden:

We represent the defendant, Nadezda Usina and write, based on <u>admissions</u> of plaintiff Russell Reynolds Associates ("RRA") developed in discovery (along with Affidavit of a Third Party and documentary evidence), to request the dismissal of this case, and the dissolution of the current Temporary Restraining Order, for lack of subject matter pursuant to Rule 12(b)(1).  This case belongs in state court, if anywhere.

**Standard for Diversity Jurisdiction**

F.R.C.P. 12(h)(3) provides that: "If the court determines at any time it lacks subject-matter jurisdiction, the court must dismiss the action." *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514, 126 S. Ct. 1235, 1244, 163 L. Ed. 2d 1097 (2006) ("Subject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived... when a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety.).

Plaintiff, RRA, filed their complaint in this case on March 21, 2023, asserting jurisdiction "pursuant to 28 U.S.C. §1332(a)(1) because this is an action between citizens of different states and the amount in controversy exceeds $75,000 exclusive of interest and costs." (Compl. ¶10, Dkt.

No. 1.) Diversity jurisdiction requires (i) 'complete diversity,' i.e., all plaintiffs must be citizens of states diverse from those of all defendants, and (ii) the amount in controversy must exceed $75,000. *See* 28 U.S.C.A. § 1332(a); *Remede Consulting Grp. Inc. v. Hamer*, 19 Civ. 3950 (NGG)(VMS), 2020 WL 1062963, at *4 (E.D.N.Y. Mar. 5, 2020).

As the party asserting subject matter jurisdiction, RRA "bears the burden of showing a factual basis for jurisdiction by a preponderance of the evidence." *Astra Oil Trading NV v. PRSI Trading Co.*, No. 08 CIV. 10467, 2009 WL 928672, at *2 (S.D.N.Y. Apr. 6, 2009) (quoting *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005)). This requires a showing of a reasonable probability that the amount in controversy exceeds $75,000 - mere allegations without more will not suffice. *See Moose v. Stant Corp.*, No. 05-CV-0707E(SC), 2006 WL 1007611, at *2 (W.D.N.Y. Apr. 13, 2006) ("Stant merely states that the value of Plaintiff's participation in Stant's insurance programs exceeds $75,000. This assertion without more is not sufficient to show a 'reasonable probability' that the jurisdictional threshold is met."). "When challenged on allegations of jurisdictional facts, the party must support his allegations by competent proof." *Hertz Corp. v. Friend*, 559 U.S. 77, 96–97 (2010) (cleaned up).

When the relief sought is non-monetary, courts seek to value the relief from the perspective of the loss Plaintiff would avoid, as opposed to defendant's alleged gain. *See Moose v. Stant Corp.*, 2006 WL 1007611 at *2 ("When the relief sought is non-monetary, courts in the Second Circuit endeavor to quantify the value of such relief. Courts ascertain the value of non-monetary relief from the perspective of the Plaintiff alone" ) (cleaned up); *Remede*, 2020 WL 1062963 at *4 (With respect to injunctive relief "the value of the requested relief is the monetary value of the benefit

that would flow to the plaintiff if injunctive or declaratory relief were granted."); *see also*, e.g., *Maxons Restorations, Inc. v. Newman*, 292 F.Supp.2d 477, 483 (S.D.N.Y. 2003)

## Allegations of Harm to RRA in The Complaint

The Complaint alleges RRA is a New York Corporation and Usina is a resident of Florida (¶¶ 8, 9). Usina does not challenge the citizenship allegations.

With respect to the amount in controversy, the Complaint alleges: solicitation of RRA clients and potential clients (Compl. ¶ 6); parking of a potential RRA client, Craig Ramsey / the College Baseball Hall of Fame (*see id*. ¶ 6, *see also* Archer Decl. ¶ 59 [Dkt. No. 11]); theft of trade secrets (not in complaint, in RRA TRO Brief, ¶ 5 [Dkt. No. 6]); theft of confidential information (Compl. ¶ 28); solicitation of RRA employees (*id*. ¶¶ 6, 37); and the expenditure of RRA of over $400,000 in expenses for Usina (*id.* ¶ 27).

## Actual Facts Developed in Discovery

On Monday, May 8, 2023, RRA produced documents. On Tuesday, May 9, Kimberly Archer, an RRA Global Hub Portfolio Leader, and Renee Bell, RRA's Head of Human Resources, both of whom had submitted Declarations in support of the allegations in the Complaint were deposed pursuant to Court Order. On May 8, RRA responded to Interrogatories and supplemented those responses by email on May 10. Based on this discovery, RRA cannot meet its burden of establishing with a reasonable probability, the jurisdictional amount in controversy.

1. **No Loss of Clients**.

RRA admits that it is not aware of any lost clients as a result of the resignation of Nada Usina and the formation of NU Advisory Partners LLC ("NU Partners"). Archer Tr. 95:5-97:2, 97:18-98:25, 128:7-130:3; Bell Tr. 84:25-85:1.

## 2.  No Solicitation of Clients by Usina or NU Partners

RRA admits it is not aware that Usina or any of the co-founders have solicited any clients of RRA. Archer Tr. 14:15-15:18. All the evidence is to the contrary, as Usina and her NU Partners co-founders have submitted multiple emails and text messages confirming that NU Partners is turning away any clients for which they worked within the past two years at RRA.  *See* Exs. 2, 86, 100, 114, 118, 123.[1]

In addition, in an abundance of caution, Usina and NU Partners have turned away multiple clients who reached and solicited Usina or NU Partners to do work, even though these would not fall within the restrictive covenants as the outreach came from the clients.  *See* NU Interrog. Resp. No. 5 (Ex. 137).

## 3.  No Parking of Craig Ramsey / The College Baseball Hall of Fame

The Complaint alleges that Usina parked a potential RRA client, Craig Ramsey / the College Baseball Hall of Fame. *See* Compl. ¶ 6. Mr. Ramsey is a Member of the Board of College Baseball Foundation (the "CBF") which elects Members to the College Baseball Hall of Fame. Mr. Ramsey has submitted an Affidavit that establishes plainly that (a) neither he nor the CBF contacted RRA about a potential search for RRA; (b) the CBF could never have afforded RRA for the search and had no intention or plan to hire RRA; (c) he contacted Ms. Usina for advice as someone he has known personally for 20 years; and (d) neither Mr. Ramsey nor the CBF has hired NU Partners for the search in question or has any intention to do so. RRA itself also admitted it has "not done work with the College Baseball Hall of Fame" or Mr. Ramsey. Archer Tr. 98:2-25.

---

[1] All exhibits have been previously provided to the Court in hardcopy and digital copy pursuant to Section C(6) of the Court's scheduling order, dated May 5, 2023.

RRA's allegation in the Complaint was unfounded when made and has now been shown to be completely false.

### 4. No Misappropriation of Trade Secrets

RRA admits it has no evidence that Usina, nor Mar Hernández, Libby Naumes and Meredith Rosenberg (the "co-founders") misappropriated any trade secrets. RRA. Supp. Interrog. Resp. No. 10 (Ex. 124) ("Plaintiff does not currently possess any physical evidence, or hard copy, documentary or electronic evidence that Defendant has misappropriated any trade secret of Plaintiff.").

### 5. No Taking of Confidential Information.

RRA admits it has no evidence that Ms. Usina nor any of the co-founders took any confidential information of RRA (or any information at all other than what is in their heads), that "there was nothing downloaded from Beacon [RRA's database of information]" (Archer Tr. 65:24-66:15; Bell Tr. 73:3-6, 95:17-96:18, 98:12-23, 111:14-18; *see also* RRA. Supp. Interrog. Resp. No. 10), and it has no evidence that Usina took any electronic or physical information (Archer Tr. 67:24-68:11), or misappropriated any confidential information or trade secrets of RRA (Bell Tr. 101:2-102:6). [2]

---

[2] With respect to the taking of improper information, RRA now contends (in an allegation not made in the Complaint) that Usina improperly downloaded information from a publicly available third-party database for which RRA paid a license fee. (Archer Tr. 64:21-65:13, 67:10-20.) Usina flatly denies this. (Usina Tr. 131:9-136:4.) In any event, this would be akin to an attorney leaving a firm and then using a Westlaw login - if true, there might be an obligation to repay the firm (or Westlaw) for the cost of the Westlaw usage, but there is no confidential information of the law firm involved. Again, Usina denies this allegation which is non-sensical. In addition, the amount RRA claims to be at issue is less than $75,000 (Archer Tr. 72:10-73:19, claiming a loss of 50% of $122,239.83, or $61,119.91; *see* Ex. 139 (LUSHA Invoice for $122,239.83 for 10/2022 through 10/2023)).

**6. <u>No Solicitation or Hiring of Employees (except the NU Partners Co-founder allegations)</u>**

Setting aside the allegations related to the supposed solicitation or recruitment by Usina of her NU Partners co-founders (which are discussed below) RRA admits it has no evidence Usina or any of the co-founders solicited or hired any RRA employees (*see* Bell Tr. 107:6-108:2; RRA Interrog. Resp. No. 5 (Ex. 117); Archer Tr. 17:9-18:11, 22:12-25:17).

**7. <u>The Allegations that Usina Solicited her Co-Founders are Thin Hearsay at Best</u>**

Ms. Bell submitted a Declaration stating that Usina was placed in "a privileged position to enable her to solicit, entice, encourage, induce or otherwise cause others, including Ms. Rosenberg, Ms. Hernández and Ms. Naumes to terminate their employment with the Company." (Bell Decl. ¶ 22 [Dkt. No. 28].) At her deposition, Ms. Bell admitted the primary basis she had for that statement was Usina's "status" in the firm. (Bell Tr. 35:2-38:5.) Against, this, Bell actually spoke with Usina, Hernández, Naumes and Rosenberg, each of whom told Bell that they had decided to form a business together and are excited to pursue the opportunity. (Bell Tr. 18:4-20:9.) Bell admits she had no reason not to believe Hernández, Naumes and Rosenberg, and did not ask any of Hernández, Naumes or Rosenberg whether they were solicited or recruited by Usina. (Bell Tr. 44:11-46:12.)

Ms. Archer submitted a Declaration stating that she "understand that she has solicited . . . at least three other current Russell Reynolds employees . . . : (a) Meredith Rosenberg (Managing Director and Shareholder), (b) Mar Hernández (Executive Director, with a promotion to Managing Director pending) and (c) Libby Naumes (Executive Director)." (Archer Decl. ¶ 4.) At her deposition, Archer admitted she never spoke to Usina nor any of the co-founders about their resignations or formation of NU Partners, and that the entire basis of her statement was (a) by

virtue of Usina's senior status at the firm, and (b) the hearsay conversation Archer allegedly had with Alexandrakis, about a conversation Alexandrakis allegedly had with Ms. Usina. (Archer Tr. 15:19-16:25, 17:9-18:11, 20:6-21:6, 25:9-26:13.)

**8.      The Masters and Formula 1 Expenses Were For RRA**

RRA admits that the $200,000 in expenses for the Masters Tournament were for tickets that were used by numerous RRA consultants, who brought clients and potential clients. (*See* RRA Interrog. Resp. No. 1, *see* Archer Tr. 146:9-147:21.) Similarly, RRA now also admits that the $100,000 in expenses for the Formula 1 event in Miami was again, for tickets and sponsorship used by numerous RRA consultants, who brought clients and potential clients. (*See* Ex. 138, *see* Archer Tr. 146:9-147:21.)[3]

**9.      No Harm to RRA**

Both Archer and Bell were asked, open-ended questions, to describe the harm to RRA from Usina's conduct. Their answers offer no actual articulable harm to RRA, instead Archer admits that RRA's business is presently performing "Quite good. Strong." (Archer Tr. 137:13-15, *see also* Bell Tr. 93:15-16 (Q. How is Russell Reynolds doing? A. Good.).)[4]

---

[3] RRA knew the misleading nature of these allegations when its papers were filed and, should this case not be dismissed, Usina intends to move for sanctions against RRA at the soonest appropriate time.

[4] The inability of both Archer and Bell to articulate any harm to RRA supports this motion to dismiss for lack of subject matter jurisdiction. It is also a complete basis, should this Court find it retains subject matter jurisdiction, to deny RRA's motion for Preliminary Injunctive relief which requires a finding of irreparable harm. *JTH Tax, LLC v. Agnant*, 62 F.4th 658, 667 (2d Cir. 2023). ("A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest") (citation omitted).

Archer offered the following as the harm to RRA:

> I think the harm to the firm is the collective nature of their departure. It's over 40 years of experience walking out the door. They had multiple client relationships that were overlapping. And, candidly, the fact that Nada took three other employees with her really was harmful in terms of how we think about succession both in her leadership roles as well as with clients. So on top of three of the four never working for another search firm, taking our confidential information that we talked about previously. While not physically; confidential information doesn't have to be physical. And it's damaging to our customer good will and unfortunate really.

Archer Tr. 153:2-23.

Bell offered the following response as to the alleged harm to the firm from Usina, Ms. Hernández, Ms. Rosenberg and Ms. Naumes working together:

> **A.** Well, again, I think given Nada's positions in the firm, access to information, and influence and information -- contacts to confidential information about the firm, there was a risk that some of that could be in jeopardy.
>
> **Q.** Other than the information -- other than the information, is there -- that's your answer?
>
> **A.** Well, the information and our protecting as well our client interests.

Bell Tr. 84:8-24.

**10.      RRA Had a Plan Treat Usina Harshly and to Dig Up Dirt on Her**

RRA's emails show it believed that Usina intended to resign and had a plan, as early as February 2023, not to treat Ms. Usina with kindness in the event she did.  (*See* Ex. 20, at RRA-0000090-91.)  Alexandrakis wrote in an internal email, dated February 17, 2023, where he referred to Usina by the sexist moniker of Bunny: "All, there are growing indications that our colleague (code name Bunny) is preparing to resign. . . . In recent years we have been milder, slower, and kinder with departures, but | don't think that will be warranted in this case." (*Id.*; Archer Tr. 99:2-9, 100:8-10 (Q. In fact, Ms. Usina was referred to as bunny, right? A. Yes.), 107:17-109:24.)

Thereafter, when Usina informed Mr. Alexandrakis that she and her co-founders would be resigning, RRA engaged in a two-pronged strategy: to mislead Usina and her co-founders into believing that RRA was interested in an amicable departure, while simultaneously having already decided to sue Usina and spend the weekend engaged in a scavenger hunt to dig up dirt on Usina. This culminated in an ambush filing of RRA's papers which were filled with unfounded, false, and misleading accusations - which were presented to this Court as the "factual" basis for entering a Temporary Restraining Order.

## **Argument**

When filed, RRA's Complaint alleged loss of clients, taking of confidential information, loss of trade secrets, the parking of clients, the on-going solicitation of clients, the on-going solicitation of employees and the expenditure of funds for the Masters and Formula 1.

RRA has now admitted—or the record clearly demonstrates—no loss of clients, no taking of confidential information, taking of trade secrets, no parking of clients, no on-going solicitation of employees, and that the expense money was for events widely attended by RRA consultants and clients.

RRA continues to contend (on the thinnest of evidence) that Usina allegedly solicited her co-founders, Mar Hernández, Libby Naumes and Meredith Rosenberg to join NU Partners. In addition, RRA contends—in an allegation not even included in the Complaint, and that Ms. Usina completely denies—that Usina misused a Login to an application called Lusha to access and download publicly available information, allegedly causing RRA $61,000 in harm.

RRA cannot meet the jurisdictional threshold with these claims. It is undisputed that Hernández, Naumes and Rosenberg were all at-will employees of RRA without term contracts or

non-competes. (Archer Tr. 8:18-10:9.) They were free to resign and walk out the door of RRA any day they wished, and RRA was free to fire them and cut off their computer access at any time without any severance obligations.

It is well established that the termination of an at-will employment relationship does not give rise to a damages claim. *Devany v. Brockway Development*, LLC, 72 A.D.3d 1008, 1009, 58 N.Y.S.2d 329 (App, Div. 2010) ("As an at-will employee, she cannot recover damages based upon the termination of her employment") (citing *Murphy v. American Home Prods. Corp.*, 58 N.Y.2d 293, 304-305). This is quite different from a term contract, where the employee may enforce the right to receive the rest of the payments she is due. *Leschak v. Raiseworks, LLC*, No. 14CV8072-FM, 2016 WL 11695068, at *6-*7 (S.D.N.Y. Mar. 7, 2016).

From the employer side, RRA has no contractual rights in Ms. Rosenberg's, Ms. Hernández's, or Ms. Naumes' continued employment. This is not a case where the allegation is that Usina interfered with a valuable contract right. RRA had no contractual rights in Rosenberg's, Hernández's, or Naumes' continued employment, and has no legally cognizable claim for losses incurred from their departure.

This distinction between term employee and at at-will employee was highlighted by Judge Rakoff and discussed at length in *In re Document Techs. Litig.*, 275 F. Supp. 3d 454 (S.D.N.Y. 2017), in a case where he found the employee non-solicitation clauses unenforceable as a matter of law due, in large part, to the distinction between term contracts and at-will employment. As reasoned by Judge Rakoff:

> The Court next turns to DTI's contention that the Individual Defendants breached their employee non-solicitation clauses, which state that during their employment and for a 12–month period after termination, the Individual

Defendants may not 'attempt to hire, solicit, induce, recruit or encourage any other employees or agents of Epiq to terminate their employment ....'

This restrictive covenant is, however, unenforceable insofar as it purports to prohibit at-will employees, who have yet to accept an offer of new employment, from 'inducing' or even 'encouraging' their coworkers to leave their present employer. In that connection, New York courts apply a three-part reasonableness test to covenants prohibiting the recruitment of employees. *Kelly v. Evolution Markets*, Inc., 626 F.Supp.2d 364, 374 (S.D.N.Y. 2009). Such a covenant 'is reasonable only if it; (1) is no greater than is required for the protection of the legitimate interest of the employer, (2) does not impose undue hardship on the employee, and (3) is not injurious to the public.' *Id*. (quoting *BDO Seidman v. Hirshberg*, 93 N.Y.2d 382, 388–389, 690 N.Y.S.2d 854, 712 N.E.2d 1220 (N.Y. 1999) ) (citing Restatement (Second) of Contracts § 188 (1981) ). The employee non-solicitation provision here fails all three requirements.

First, although DTI contends that the covenant prevents 'the potential harm to a company's operations arising from the coordinated en masse resignation of several employees,' Pls.' Rebuttal at 7, this is not a legally cognizable interest for the purposes of a restrictive covenant. The "legitimate interest of the employer must protect against unfair competition, not simply to avoid competition in a general sense." *Kelly*, 626 F.Supp.2d at 374 (citing *Lazer Inc. v. Kesselring*, 13 Misc.3d 427, 823 N.Y.S. 2d 834 (Sup.Ct. 2005)). Accordingly, the New York Court of Appeals has 'limited the cognizable employer interests under the first prong of the common-law rule to the protection against misappropriation of the employer's trade secrets or of confidential customer lists, or protection from competition by a former employee whose services are unique or extraordinary.' *BDO Seidman*, 93 N.Y.2d at 389, 690 N.Y.S.2d 854, 712 N.E.2d 1220 (citing *Reed, Roberts Assocs., Inc. v. Strauman*, 40 N.Y.2d 303, 308, 386 N.Y.S.2d 677, 353 N.E.2d 590 (1976)).

DTI does not contend that the employee non-solicitation covenant is necessary to protect its trade secrets or confidential customer lists. And even if the Individual Defendants' services could be described unique or extraordinary, their decision to market themselves as a "package deal" is not a form of competition, let alone <u>unfair</u> competition....

**To be sure, if DTI desires to prevent its employees from coordinating their resignations, it is free to hire them pursuant to term employment agreements. DTI, however, cannot use restrictive covenants to supply itself all the benefits of term agreements while simultaneously retaining**

**the right to lay off its personnel whenever it so desires. This is not a proper purpose for such a restraint on free market competition.**

*Id.* at 466-467 (emphasis added, footnotes omitted); *see also id.* at 467 n. 14 ("The mere fact that the Individual Defendants were some of DTI's top-earners is immaterial") (citation omitted).

RRA's has the burden of establishing jurisdiction. It filed a Complaint that made false, unfounded, and now disproved allegations. Based on its own admissions and the facts developed in discovery, RRA cannot meet its burden of establishing, with a reasonable probability, damages of over $75,000. *Bonafide Builders, Inc. v. Colony Ins. Co.*, No. 22-CV-7906(DLI)(RER), 2023 WL 2954985, at *4 (E.D.N.Y. Apr. 14, 2023) ("Courts in this district consistently have held that the speculative nature of this type of allegation fails to satisfy the jurisdictional threshold under 28 U.S.C. § 1332(a).").

For the foregoing reasons, RRA's fails to meet its burden of showing an amount in controversy of at least $75,000, and its claim must be dismissed for lack of subject matter jurisdiction.

Respectfully,

/s/ Jonathan Harris

Jonathan Harris