**Weil, Gotshal & Manges LLP**

767 Fifth Avenue
New York, NY 10153-0119
+1 212 310 8000 tel
+1 212 310 8007 fax

**John P. Barry**
John.barry@weil.com

May 15, 2023

**VIA ECF ELECTRONIC FILING**

Hon. Jennifer H. Rearden
United States District Court
Southern District of New York
500 Pearl Street, Room 1010
New York, NY 10007

Re:     *Russell Reynolds Associates, Inc. v. Usina,* Case No. 1:23-cv-02369-JHR;
         Letter Response to Motion to Dismiss for Lack of Subject Matter Jurisdiction

Dear Judge Rearden:

On behalf of Plaintiff Russell Reynolds Associates, Inc. ("RRA"), we write in response to Defendant Nadezda Usina's Letter Motion to Dismiss for Lack of Subject Matter Jurisdiction (ECF No. 93).[1]  Usina's Letter Motion is devoid of basis in either fact or law.  Because RRA has shown there is a "reasonable probability" that its claims meet the jurisdictional threshold, and Usina conversely cannot prove to a "legal certainty" that they do not, her motion must be denied.

**Legal Standards**

Under 28 U.S.C. § 1332(a)(1), this Court has original jurisdiction over civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and

---

[1] This Court's May 12, 2023 Order granted Usina's letter-motion to file a pre-hearing memorandum of law only "insofar as Defendant intends to address the Court's subject matter jurisdiction." ECF No. 79 at 2.  To that end, RRA responds only to those arguments that the Court's order granted Usina leave to address; that is, Plaintiff responds only to Usina's subject matter jurisdiction arguments.  Should the Court consider Usina's arguments outside of the subject matter jurisdiction context, *e.g.*, Usina's frivolous references to a motion for sanctions and a motion to deny RRA's motion for Preliminary Injunctive Relief (ECF No. 93 at 7, n. 3, n. 4), RRA respectfully requests leave to address those arguments as well.

May 15, 2023
Page 2

costs, and is between citizens of different States.  Defendant's Letter Motion challenges only the

amount in controversy aspect of the jurisdictional requirement under 28 U.S.C. § 1332(a)(1).

As Usina acknowledges, as the party invoking this Court's jurisdiction, RRA must only

prove "to a 'reasonable probability' that the claim is in excess of the statutory jurisdictional

amount." *Scherer v. Equitable Life Assurance Society of U.S.*, 347 F.3d 394, 397 (2d Cir. 2003)

(citation omitted).  "This burden is hardly onerous, however, for [courts] recognize 'a rebuttable

presumption that the face of the complaint is a good faith representation of the actual amount in

controversy.'" *Id.* (citing *Wolde–Meskel v. Vocational Instruction Project Cmty. Servs., Inc.*, 166

F.3d 59, 63 (2d Cir. 1999)).  To overcome this extremely deferential presumption, **Usina, as the**

**party claiming lack of subject matter jurisdiction, must prove to a "legal certainty"**[2] **that**

**the amount recoverable does not meet the jurisdictional threshold**. *Hall v. EarthLink*

*Network, Inc.*, 396 F.3d 500, 507 (2d Cir. 2005) (emphasis added); *see also St. Paul Mercury*

*Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845 (1938) ("[t]he rule

governing dismissal for want of jurisdiction in cases brought in the federal court is that, unless

the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently

made in good faith.  It must appear to a legal certainty that the claim is really for less than the

jurisdictional amount to justify a dismissal").  "[T]he legal impossibility of recovery must be so

certain as virtually to negative the plaintiff's good faith in asserting the claim." *Chase Manhattan*

*Bank, N.A. v. Am. Nat. Bank and Trust Co. of Chicago*, 93 F.3d 1064, 1070-71 (2d Cir. 1996)

(citation omitted). **Usina cannot meet this high standard.**  "[E]ven where [the] allegations

---

[2] Usina conveniently omits this difficult standard she must meet in order to achieve her burden.

May 15, 2023
Page 3

leave grave doubt about the likelihood of a recovery of the requisite amount, dismissal is not warranted." *Zacharia v. Harbor Island Spa, Inc.*, 684 F.2d 199, 202 (2d Cir.1982).

The amount-in-controversy must also be **measured as of the time of the filing of the complaint**, and is generally **not reevaluated based on post-filing events** in diversity cases. *Hall v. EarthLink Network, Inc.*, 396 F.3d 500, 506-07 (2d Cir. 2005) (emphasis added). "Evidence concerning events that post-date the filing of a complaint is relevant only to the extent that it casts light on whether recovery was never legally possible or whether a plaintiff had a good faith belief, at the time the complaint was filed, that the jurisdictional requirement was met." *Chase Manhattan*, 93 F.3d at 1071. But Usina has never made such claim, since she did not make a motion or otherwise challenge this Court's jurisdiction at the outset of the case.

Finally, "[w]here the plaintiff seeks injunctive relief, **the value of [its] claim is generally assessed with reference to the right [it] seeks to protect and measured by the extent of the impairment to be prevented by the injunction.**" *A.F.A. Tours, Inc. v. Whitchurch*, 937 F.2d 82, 87 (2d Cir. 1991) (emphasis added) (citing 1 Moore's Federal Practice ¶ 0.96[2] (2d ed. 1991); 14A Wright & Miller § 3708, at 143–44). "In calculating that impairment, the court may look not only at past losses but also at potential harm." *Id.* (citing 14A Wright & Miller § 3708, at 146–49). "[T]he amount in controversy is **calculated from the plaintiff's standpoint**; 'the value of the suit's intended benefit' or the value of the right being protected or the injury being averted constitutes the amount in controversy when damages are not requested." *Kheel v. Port of New York Auth.*, 457 F.2d 46, 49 (2d Cir. 1972) (citation omitted) (emphasis added).

Appling these well-settled legal standards, it is undeniable that RRA's claims in the Complaint meet the requisite amount in controversy to invoke this Court's jurisdiction:

May 15, 2023
Page 4

1.  Determining the amount-in-controversy for establishing jurisdiction is measured as of the time of the filing of the complaint, and is not changed by post-filing events.

2.  In the context of claims for injunctive relief, like those advanced here for breach of employee and customer non-solicitation obligations, the Court may rely on considerations such as RRA's revenue, the revenue Usina earned for RRA (which in Usina's own words, was over $20 million in 2021, and over $15 million in 2022), and Usina's compensation (over $15 million paid to her over the last two years) to measure the amount-in-controversy.  Such factors meet the amount-in-controversy requirement.

3.  Courts routinely recognize that the loss of confidential information and customer goodwill constitutes irreparable harm and have granted injunctive relief to prevent that irreparable harm, demonstrating that the amount-in-controversy is measured in relation to preventing this harm.  *See Estee Lauder Co. Inc. v. Batra*, 430 F. Supp. 2d 158, 174 (S.D.N.Y. 2006); *N. Atl. Instruments, Inc. v. Haber*, 188 F.3d 38, 49 (2d Cir. 1999); *Nat'l Elevator Cab & Door Corp. v. H&B, Inc.*, 282 Fed. App'x 885, 887 (2d Cir. 2008).

4.  Even if the Court considers the evidence to date the amount-in-controversy requirement is clearly established, including through the impact of Usina's solicitation of RRA employees on RRA (and the need and associated costs of recruiting and replacing four critical employees to the business), the negative impact on RRA's Miami office, RRA's technology practice, other potential harm of loss of confidential information and customer goodwill of these four former RRA employees who had worked closely together, and the fact that Usina appears to have downloaded a significant amount of information that she accessed through an RRA licensing agreement with a third-party.

May 15, 2023
Page 5

### Argument

Usina's Letter Motion must be denied because she cannot show **with legal certainty** that RRA does not meet the amount-in-controversy requirement based on purported facts uncovered during discovery. As a threshold matter, **Usina's argument fails as a matter of law because determining the amount-in-controversy for establishing jurisdiction is measured as of the time of the filing of the complaint**. *Hall v. EarthLink Network, Inc.*, 396 F.3d 500, 506-07 (2d Cir. 2005). Yet Usina's Letter Motion challenges jurisdiction based entirely on post-filing discovery, which is contrary to Second Circuit law. *Id.* Usina does not argue (and never has argued) that RRA's Complaint failed to establish the amount-in-controversy at the outset. Nor could she. The Complaint alleged that Usina, a top five ranked biller at RRA and extremely highly compensated Managing Director of RRA, breached her restrictive covenants in the Stock Agreement by soliciting at least Ms. Rosenberg, Ms. Hernandez and Ms. Naumes (collectively, "NU's Team") and enticing or encouraging NU's Team to leave their employment, and thereafter engaging in services with NU's Team, "parked" at least one RRA client opportunity, and, along with NU's Team, had access to troves of RRA confidential information that was put at risk by Usina and NU's Team's departures—each of which individually (and collectively) would cause irreparable harm to RRA if Usina were not enjoined as requested. ECF No. 1 at 4-17. RRA's Complaint clearly established the amount-in-controversy and met the jurisdictional requirement in this case, especially considering the potential harm that the Complaint alleged.

Even if the Court were to consider post-filing information purportedly learned during the extremely limited, expedited discovery conducted to date (i.e., discovery over the course of a mere three weeks), **Usina's claim of lack of jurisdiction is belied by other facts developed before and during discovery that Usina has omitted from her Letter Motion**. For example,

May 15, 2023
Page 6

discovery has established that Usina and NU's Team each individually and collectively had access to immense amounts of RRA confidential information (ECF No. 81 at ¶¶ 92-121) which disclosure would cause RRA irreparable harm. Usina and NU's Team each individually and collectively also cultivated significant client relationships and customer goodwill on behalf of RRA which has now put at considerable risk given Usina and NU's Team departures. *Id.* at ¶¶ 83-86. By Usina's own affidavits and those submitted by NU's Team, Usina and NU's Team have been discussing forming a new venture since at least 2018, and thus, the irreparable harm caused by Usina's 5-year long solicitation, enticement and encouragement of NU's Team to terminate their employments with RRA and ultimately, NU's Team's departures (that followed Usina's) to join Usina at NU Advisory Partners is certainly greater than $75,000. *Id.* at ¶ 122. Even if the Court credited Usina's argument that facts developed to date in limited, expedited discovery that has taken place over a mere three weeks are relevant, there are clearly counter-facts revealed in discovery that the Court will consider at the Preliminary Injunction Hearing. Thus, Usina fails to show it is a "legal certainty" that the amount-in-controversy is not met.

Further, **Usina's arguments fail to recognize that in measuring the amount-in-controversy, this Court must consider not only past losses, but potential harm as well**. *See A.F.A.*, 937 F.2d at 87 (citing 14A Wright & Miller § 3708, at 146–49). As such, this Court should also consider the irreparable harm that may still arise based on Usina's actions to date in breach of her Stock Agreement if she is not enjoined as requested by RRA—both in terms of potential risk of disclosure of confidential information and loss of client relationships and customer goodwill. RRA has been working, and continues to work, diligently to ensure that its confidential information is not improperly disclosed (including by filing this litigation) and to shore up client relationships, evaluate the transition of open client engagements, and to assess the

May 15, 2023
Page 7

extent of other potential client losses that it is to date not even aware of yet. *E.g.*, ECF No. 84-1 at 34-35 (Archer testifying that RRA had to react quickly to manage the crisis following Usina's departure with Ms. Hernandez, Ms. Rosenberg, and Ms. Naumes, and to assure clients RRA would be able to serve them). Indeed, RRA's witnesses specifically testified during their depositions that it remains to be seen still the potential harm that Usina and NU's Team's departures will have on RRA, as the process of evaluating the impact is still ongoing. *E.g.*, ECF No. 84-1 at 6 (Archer testifying that while she's not aware of any clients Usina solicited, it is possible there could be solicited clients that she is not aware of, and that she is not aware of what is happening outside of RRA). And importantly, as demonstrated in RRA's Memorandum of Law in Support of its Proposed Order to Show Cause to Hold Defendant in Contempt (ECF No. 88 at 9-11), in light of Usina's continued disregard of the Court's Order, dated April 21, 2023, there is a strong likelihood that RRA is continuing to suffer additional harm from Usina's conduct.

*AFA Tours, Inc. v. Whitchurch*, 937 F.2d 82 (2d Cir. 1991) is instructive. There, the plaintiff, a travel and tours company, alleged that its former employee had misappropriated the company's confidential information (including a client and customer list, marketing information, and tour information) and solicited or intended to solicit participants from the company's customer list. *Id.* at 84. The plaintiff brought a claim in this District based on diversity jurisdiction, seeking to enjoin the defendant from using its confidential information, as well as damages which it believed were above the jurisdictional amount. *Id.* On appeal, the Second Circuit reversed the district court's dismissal for lack of subject matter jurisdiction. *Id.* at 87. The Second Circuit reasoned that where the plaintiff seeks injunctive relief, the amount-in-controversy is measured with reference to the right they seek to protect, as well as by the extent

May 15, 2023
Page 8

of the impairment to be prevented by the injunction. *Id.* at 87-88.  Based on the customer

information the defendant had from the company, costs of tours, and the defendant's ability to

solicit customers, the Second Circuit found that "the profit [the defendant] could siphon from

[the plaintiff] would total" more than the jurisdictional requirement. *Id.* at 88-89.  And, on the

company's request for injunctive relief against the defendant's use of the company's confidential

information, the Second Circuit considered what the defendant could do with that information,

and the profit the defendant could earn from using the plaintiff's confidential information. *Id.* at

89.  The Second Circuit concluded that, even though the company had not *yet* shown damages

meeting the jurisdictional amount, the district court could not "find with **legal certainty** that the

value of [the company's] claims did not exceed [the jurisdictional threshold]." *Id.* at 88-89.

Here, too, the record does not permit the Court to find with "legal certainty" that RRA's

claims do not meet the amount-in-controversy requirement.  RRA's claim for injunctive relief

enjoining Usina, along with NU's Team, from using or disclosing its confidential information in

connection with engaging in services together on behalf of NU Advisory, may be measured

either by the losses RRA would suffer if Usina were to use or disclose RRA's confidential

information, or by the profits unjustly received by Usina's and NU's Team's improper use of

RRA's confidential information.  The record is clear that Usina and NU's Team had access to

immense amounts of highly confidential RRA information. *E.g.*, ECF No. 81 at ⁋ 92-121; ECF

No. 84-1 at 18-19 (Archer explaining the intellectual property and highest levels of confidential

information that Usina is taking with her from RRA).  If Usina, along with NU's Team, were to

improperly use or disclose RRA's confidential information in breach of her Stock Agreement,

RRA would suffer irreparable harm well in excess of the jurisdictional threshold. *See* ECF No.

81 at ⁋⁋ 115-119 (regarding the value and sensitivity of RRA's confidential information).

May 15, 2023
Page 9

RRA also seeks to enjoin Usina from soliciting RRA employees and, in reference to this right, the amount-in-controversy can be measured by the harm that RRA would suffer based on Usina's actions to date vis-à-vis NU's Team. This harm might be measured by the RRA confidential information NU's Team had access to that, if RRA lost, would irreparably harm RRA and certainly exceeds the jurisdictional requirement (ECF No. 81 at ¶¶ 92-121); or by the client relationships and customer goodwill that RRA would lose through Usina's solicitation and enticement of, and engagement of services with, NU's Team, which in light of the high level executive and Board-related searches that Usina and NU's Team conducted, also undoubtedly exceeds the jurisdictional requirement (ECF No. 81 at ¶¶ 83-91). *See* AFA, 37 F.2d at 88-89 (measuring the harm that would result to the company from the defendant's solicitation of the company's customers as the potential profit the defendant could earn from this solicitation). By any of these measures, from the vantage point of the interests that RRA seeks to protect – its confidential information and customer goodwill – the amount-in-controversy is clearly met.

*Remede Consulting Grp. Inc. v. Hamer*, No. 19-CV-3950-NGG-VMS, 2020 WL 1062963 (E.D.N.Y. Mar. 5, 2020) is also helpful. In *Remede*, the plaintiff brought an action against a former employee, seeking injunctive relief to prevent the former employee from soliciting the plaintiffs' employees and customers for a period of two years, and to enjoin him from using or disclosing the plaintiffs' proprietary information or trade secrets. *Id.* at *2. The former employee's employment agreement prohibited him from removing certain confidential information from the plaintiffs' offices and contained a two year employee and customer non-solicit. *Id.* When determining whether the amount-in-controversy had been met, the Court noted that it was required to consider both the damages already accrued and "the amount that flows directly and with a fair degree of probability from the litigation." *Id.* Since the plaintiffs were

May 15, 2023
Page 10

entitled to an injunction in the event of a breach of the defendant's employment agreement, the court considered "the value of the injunctive relief that would flow from a breach." *Id.* at 4. The court determined the amount-in-controversy met the jurisdictional requirement in part because the plaintiffs' business had generated over $10 million in revenue in a single year, and that there was "at least that much business to be protected from solicitation by [the d]efendant." *Id.* Here, Usina's Stock Agreement prohibits her from using or disclosing RRA's confidential information, soliciting RRA employees, and soliciting RRA clients. *See* ECF No. 25-1 at ¶ (Usina stating she brought in over $20 million in revenue to RRA in 2021, and over $15 million in revenue in 2022). Because RRA is entitled to injunctive relief in the event of a breach to protect against the irreparable harm that has been discussed herein and in RRA's Application, the Court should consider the value of such injunctive relief to RRA in determining the amount-in-controversy. In doing so, in light of Usina's stature within the firm, the lucrative compensation paid to her over the last two years, and the size of Usina's book of business and amount of revenue generation at the time of her departure, the amount-in-controversy is certainly met. Indeed, in the context of injunctive relief in the employment context, this Court has recognized that potential loss to a former employer resulting from a former employee's breach of their restrictive covenants can far exceed the amount-in-controversy requirement. *See Maxons Restoration, Inc. v. Newman*, 292 F. Supp. 2d 477, 483-84 (S.D.N.Y. 2003). In this case, as in *Maxons* and as in *Remede*, the harm to RRA's "own economic interests" resulting from Usina's breach of her Stock Agreement reasonably exceeds the amount-in-controversy threshold.

Finally, to the extent Usina argues that termination of an at-will employment relationship does not give rise to a damages claim, or that RRA has no contractual right to Usina or NU's Team's continued employment, that argument is wholly misplaced. RRA is not claiming that it

May 15, 2023
Page 11

had a contractual right to Usina or NU's team's continued employment. Rather, it is claiming that Usina has breached the non-solicitation obligations in her Stock Agreement in soliciting NU's Team and is seeking relief to protect against the irreparable harm to RRA that would flow from that breach, as well as the other damages that arise from this breach, such as the costs associated with replacing three critical employees of RRA who collectively generated several millions in revenue and were paid several millions in compensation over the last two years. The Court in *In re Document Techs. Litig.*, 275 F. Supp.3d 454 (S.D.N.Y. 2017) never held that it lacked subject matter jurisdiction where the plaintiff contended similar breaches. Moreover, several other Courts in this district have granted the very injunctive relief that RRA is seeking here on the basis of employee non-solicitation provisions, recognizing that subject matter jurisdiction had been established by virtue of the value of the same non-monetary relief sought by the plaintiffs in those case. *See Oliver Wyman, Inc. v. Eielson*, 282 F.Supp.3d 684, 694 (S.D.N.Y. Sep 29, 2017) (finding employer would "be at risk of losing valuable clients and business as a result of" employee's solicitation of other employees); *Transcript of Oral Argument* at 20, *McGraw-Hill Educ., Inc. v. Meelia*, No. 1:17-cv-04271-ER (S.D.N.Y. July 25, 2017) ("there is a likelihood of irreparable harm in that McGraw-Hill may see the loss of valuable employees that have trade secrets and that have relationships with their customer base, and the case law in this district suggests that that type of loss can be irreparable").

For the foregoing reasons, RRA respectfully requests the Court deny Usina's Letter Motion[3]. Thank you for Your Honor's consideration.

---

[3] To the extent this Court is inclined to grant Usina's Letter, Motion RRA respectfully requests additional time that constitutes a "reasonable opportunity", i.e., more than 24 hours, to show in good faith that RRA's recovery meets the jurisdictional amount. *See Arnold v. Troccoli*, 344 F.2d

May 15, 2023
Page 12


Respectfully,

John P. Barry

cc: All Counsel of Record (via electronic service)

---

842, 846 (2d Cir.1965) (before determining that a plaintiff's claim does not meet the
jurisdictional requirement, the court must afford the plaintiff an "appropriate and reasonable
opportunity to show good faith in believing that a recovery in excess of [the jurisdictional
amount] is reasonably possible.").  And if the Court is further not inclined to give RRA an
additional "reasonable opportunity" to respond, rather than dismiss RRA's Complaint, RRA
respectfully submits that Fed. R. Civ. P. 15(a)(1)(B) requires that RRA be allowed to amend its
Complaint as a matter of right, within 21 days of Usina's Letter Motion.